IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARRELL THOMPKINS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-08-2380 |
| | § | |
| NATHANIEL QUARTERMAN, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND RECOMMENDATION DENYING
PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS**

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Answer (Document No. 10) to Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered Respondent's Answer, in which Respondent argues that no relief is available to Petitioner on the merits of his claims, Petitioner's "Response to Respondent's Answer" (Document No. 18), the claims raised by Petitioner in his § 2254 Application (Document No. 1), the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED, and that this case be DISMISSED WITH PREJUDICE on the merits.

### I. Introduction and Procedural History

Darrell Thompkins ("Thompkins") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of a 1998 murder conviction in the

183rd District Court of Harris County, Texas, Cause No. 762944. Thompkins was charged by indictment with the offense of murder, on September 9, 2007, pled not guilty, and proceeded to trial. On July 17, 1998, a jury found Thompkins guilty of murder, and thereafter sentenced him to forty years imprisonment. Thompkins' conviction was affirmed on appeal on September 28, 2000. *Thompkins v. State*, No. 14-98-00902-CR (Tex. App.– Houston[14th Dist.] Sep. 28, 2000). Thompkins' petition for discretionary review was refused on May 30, 2001.

Thompkins filed a state application for writ of habeas corpus on July 23, 2002. On July 9, 2008, the application was denied without written order on the findings of the trial court without a hearing. *Ex parte Thompkins*, Application No. 70, 101-01. This § 2254 proceeding, filed by counsel for Thompkins on July 31, 2008, followed. Respondent has filed an Answer to Petitioner's Federal Application for Writ of Habeas Corpus, to which Thompkins filed a "Response to Respondent's Answer" (Document No. 18). This § 2254 proceeding is ripe for ruling.

## II.   Factual Background

The factual background, as set forth by the Texas Court of Appeals in its unpublished opinion affirming Thompkins' conviction, is as follows:

> Holmes, [Thompkins], and [Thompkins]'s best friend, Haaq, were watching television in the upstairs room of a townhome. Holmes witnessed [Thompkins] and Haaq in a heated argument. Holmes walked to the next room and heard a shot from the room he had just left. [Thompkins] had shot Haaq in the head. When Holmes came back to the room, he saw [Thompkins] excitedly jumping and heard him say, "I can't believe I did it. I didn't mean to do it. What am I going to do? " Holmes also noticed a gun on the floor.
>
> [Thompkins] remained in the townhouse for about five to ten minutes before leaving. As he left, Holmes called 911 and Haaq's mother. On his way out, [Thompkins] picked up the gun and ran to his mother's nearby townhome. On the way to his mother's, [Thompkins] threw the gun into a parking lot. It has never been recovered.

2

> The police apprehended [Thompkins] at his defense counsel's office after an anonymous tip to Crime Stoppers.

*Thompkins v. State*, No. 14-98-00902-CR (Tex. App.– Houston[14th Dist.] Sep. 28, 2000).

### III.  Claims

Thompkins raises one claim in this § 2254 proceeding: that his trial counsel was ineffective for: (1) failing to investigate Petitioner's prior criminal history; (2) failing to discover that Petitioner had owned a gun before; and (3) having Petitioner testify in his own defense. According to Thompkins, given that the defense's theory was that Thompkins had not intentionally killed Haaq and that the gun discharged accidentally, counsel should have conducted a more thorough pretrial investigation, which would have revealed that Thompkins had owned and possessed a gun prior to the incident made the basis of the murder charge. Had counsel conducted such an investigation, counsel would have known not to ask Thompkins about his prior possession and ownership of a gun, and would have not placed Thompkins in a position to have his testimony impeached with evidence of his prior gun ownership.

In response to this ineffectiveness claim, Respondent maintains that no relief is available herein under § 2254(d) because the Texas Court of Criminal Appeals rejected the claim when it denied Thompkins' state application for writ of habeas corpus on the findings of the state trial court, and its adjudication of the claim was not contrary to or an unreasonable application of clearly established Federal law as established by the Supreme Court of the United States nor was it based on unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### IV. <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle

4

to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable"). Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As

instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

### V.     Discussion

Claims of ineffective assistance of trial counsel are generally measured by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir.

1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003).

In connection with his state application for writ of habeas corpus, Thompkin's trial counsel, Ms. Cheryl Irvin, was ordered to file an affidavit addressing Thompkin's ineffectiveness allegations. In that affidavit, Ms. Irvin stated:

> I believe I was well prepared for this case and I was very confident in the outcome. I had spent a huge number of hours in preparation and preparing

[Thompkins] for trial. I believe I prepared [Thompkins] well and [Thompkins] seemed very calm and confident. I spoke with all witnesses who were willing to speak with me. I spent a huge number of hours discussing the case with [Thompkins] I reviewed the State's files and photos that were in that file.

I felt from the beginning that [Thompkins] should tell his side of the story especially since he and the decedent were best friends and because he seemed truly sorry for what had happened. After spending a lot of time with him I concluded that [Thompkins] is a very smart guy and should present himself well. I also discussed with him how no witness could refute what he said occurred because he was the only one who knew how the gun went off. My advice to [Thompkins] was that it was in his best interest to testify and he agreed and felt comfortable and confident he could testify successfully. [Thompkins] agreed that somebody needed to explain how the gun went off and hit [Thompkins'] best friend as well as the context of the argument and he was the only one that could do so.

I was familiar with [Thompkins] criminal record but did not remember there was a gun in the car when he was arrested and received deferred adjudication in a possession of cocaine case in Galveston, Texas. I represented [Thompkins] in that case. I do not recall any specific conversations with [Thompkins] regarding the weapon and he was not charged with illegally carrying a weapon in that case. However, I did ask him repeatedly whether he had a gun before and he replied no. I also discussed with [Thompkins] how that deferred probation case could be brought up in the instant case and told him if he testified, what not to say regarding his criminal history. For example, "I am a great guy I never been in trouble before" things of that nature.

I do not recall any specific conversations with him regarding the specific facts of the previous case but I had prepared him to testify regarding this case and based upon his negative answers to my gun questions I was confident that [Thompkins] was ready for cross-examination about this case. I did remind [Thompkins] throughout the trial of things we had discussed to make sure he was ready to testify.

I discussed the ownership of the gun with [Thompkins]. I was extremely specific regarding this point. I may have asked [Thompkins] more than ten times in ten different ways regarding the ownership of the gun and his history with and possession of guns. I was interested in eliminating any possible rebuttal by the State because of an untruthful answer that could possibly come back and hurt [Thompkins'] case. I also made sure that he understood that I was not concerned with the answers that [Thompkins] gave me but that only [Thompkins] answers were truthful and I would represent him to the best the best of my ability regardless of what the answers were. I told him that I would determine the way to proceed on the case based on his truthful answers. Despite this, I was not concerned with the answers that [Thompkins] gave me but that only [Thompkins] answers be truthful. [Thompkins] answers were

8

>    always consistent - [Thompkins] told me repeatedly that he had never owned a gun prior to purchasing one on the day of the shooting, he had never fired a gun, never been in possession of one before and that he did not know how to handle a gun. I also asked [Thompkins] if there was anybody in the world who could say that they have ever seen you in possession of a gun and [Thompkins] said that no one could. I was extremely upset that he had lied to me and I believe that had he told me truth we still would have a excellent chance of winning the case.
>
>    I believed that the best strategy was to put [Thompkins] on the stand to testify after the State rested its case and I planned accordingly. I further believed that I had prepared [Thompkins] well to do so. I believed that [Thompkins] needed to explain how he accidentally shot his best friend and further clarify that the argument between [Thompkins] and the decedent was not about anything serious and was over at the time of the shooting. I believed that [Thompkins] really needed to tell his side of the story and he would present himself well because he was smart and seemed truly sorry for what had happened. I also believed the jury would find him credible and would appreciate the emotion he showed.

*Ex parte Thompkins*, Application No. 70, 101-01 at 61-64. The state trial court found the statements in Ms. Irvin's affidavit to be true. *Id.* at 76, and rejected Thompkin's ineffectiveness claims.

The state courts rejected Thompkins' ineffectiveness claim(s) upon the following findings and conclusions:

1. Irvin represented [Thompkins] in the primary case, cause number 762944, on the charge of murder in the 183rd District Court of Harris County, Texas.
2. Irvin was reasonably prepared for trial.
3. Irvin reasonably prepared [Thompkins] to testify.
4. Irvin reasonably investigated the case.
5. Any limitation of Irvin's investigation was reasonable based on her reliance on [Thompkins] untruthful answers to her questions about [Thompkins] dealings with guns.
6. [Thompkins] fails to show that his trial counsel's pre-trial investigation and preparation fell below an objective standard of reasonableness.
7. [Thompkins] falsely told trial counsel that he never owned or possessed a gun and no one could testify that they had seen [Thompkins] in possession of a gun.
8. The fact of [Thompkins] prior gun ownership and possession is not the kind of fact that is open to interpretation depending on the witness being asked.
9. As there could be no motive for gain from [Thompkins] misrepresenting his prior gun possession and ownership, [Thompkins] statement that he never owned or possessed a gun was worthy of belief by his counsel.
10. [Thompkins] cannot now claim that he suffered ineffective assistance of counsel based

9

>
> upon counsel's surprise revelations that [Thompkins] had previously possessed a gun because counsel was pursuing a plausible defense strategy based upon information provided by [Thompkins], on which she should have been able to reasonably rely.
> 11. The totality of the representation afforded [Thompkins] was sufficient to protect his right to reasonably effective assistance of counsel in primary case.
> 12. In all things, [Thompkins] has failed to demonstrate that his conviction was improperly obtained.

This Court cannot grant habeas corpus relief unless it determines that the state court's determination was in conflict with clearly established federal law as determined by the Supreme Court or that it "was based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). The factual determinations underlying the adjudication are entitled to a presumption of correctness which must be rebutted by a presentation of clear and convincing evidence. 28 U.S.C. § 2254(e). Here, Thompkins claims that counsel was ineffective for: (1) failing to investigate Thompkin's prior criminal history; (2) failing to discover that Thompkins had owned a gun before; and (3) having Thompkins testify in his own defense.

The Texas Court of Criminal Appeals, in denying Thompkin's state application for writ of habeas corpus on the findings of the state trial court without a hearing, adopted the findings of the state trial court as its own. Based on those findings, particularly the verity of the statements in Ms. Irvin's affidavit, the Texas Court of Criminal Appeals' rejected Thompkins' ineffective assistance of counsel claims related to counsel's alleged failure to investigate Thompkin's prior arrest involving a gun, counsel's alleged failure to realize that calling to Thompkins as a witness would open the door to Thompkin's prior arrest involving a gun, and counsel's alleged failure advising Thompkins to testify. That rejection is not contrary to or an unreasonable application of *Strickland*.

Thompkins asserts that his case is akin to *Awkal v. Mitchell*, 559 F.3d 456 (6th Cir. 2009). In *Awkal*, the Sixth Circuit reversed petitioner's conviction and death sentence and concluded that

10

petitioner's counsel provided ineffective assistance by calling an expert witness who testified that petitioner was sane at the time of the murders. *Id.* at 464. Given the fact that the expert's testimony completely eviscerated the sole defense of the petitioner that he was insane at the time of the murders, the decision to put the expert on the stand was found to be objectively unreasonable. *Id.* The petitioner in *Akwal* was able to establish prejudice because defense counsel's decision caused such obvious and extensive harm to petitioner's case that there was a reasonable probability that, had defense counsel not called the witness, the jury's verdict would have been different. *Id.* at 467. Thompkins contends his case is analogous to *Akwal* because his only logical defense was that of an accident, and that evidence of the prior arrest was in direct contravention of this defense.

In the instant case, unlike *Akwal*, Thompkins was untruthful with his attorney, Ms. Irvin. Thompkins repeatedly informed her before trial that he had no prior history with a gun, that he never owned a gun prior to purchasing one on the day of the shooting, he had never fired a gun, and furthermore never been in possession of one before and that he did not know how to handle a gun. Additionally, Thompkins stated that no one would be able to testify that he had ever been in possession of a gun. At trial, however the State presented evidence that other people had seen Thompkins with a gun before this incident. In fact, a police officer testified that in July of 1996, he performed a search of a car in front of which Thompkins was standing and found a fully loaded .357 Magnum revolver under the floor mat of the car. Later, Thompkins admitted that the gun was his. Additionally, Thompkins' friend and witness to Haaq's death testified that he had seen Thompkins with a gun before this incident.

Thompkins has tried to present evidence, through an affidavit by Ms. Irvin, that she was aware of Thompkins' previous gun charge. In that affidavit, Ms. Irvin admits that she represented

Thompkins previously in possession of cocaine case in Galveston, Texas. However, Ms. Irvin further asserts that she did not remember that when Thompkins was arrested, a .357 Magnum was found in his possession and that he may have admitted the gun was his. Statements made by Thompkins to his counsel, explain Ms. Irvin's failure to investigate Thompkins' prior arrest involving a gun. *See Bryant v. Scott*, 28 F. 3d 1411, 1415 (5th Cir. 1994)("the reasonableness of an attorney's investigation may critically depend on the information forwarded by the defendant."). In light of Thompkins' statements to Irvin, counsel was not deficient for failing to realize that if Thompkins testified, his prior arrest involving a gun would be revealed. If counsel erred in representation of Thompkins, it was brought about by Thompkins himself. *See United States v. Raymer*, 876 F.2d 383, 388 (5th Cir. 1989)("A defendant cannot complain on appeal of alleged errors invited or induced by himself...")(quoting *United States v. Lewis*, 524 F.2d 991, 992 (5th Cir. 1975)). Thompkins has not presented clear and convincing evidence to rebut the factual determinations underlying the adjudication which are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e). Therefore, Thompkins' ineffective assistance of counsel claims related to counsel's alleged failure to investigate Thompkin's prior arrest involving a gun, counsel's alleged failure to realize that calling to Thompkins as a witness would open the door to Thompkin's prior arrest involving a gun, and counsel's alleged failure advising Thompkins to testify, all fail under § 2254(d).

In all, both the record and the findings of the state court support the conclusion of the Texas Court of Criminal Appeals that "[t]he totality of the representation afforded [Thompkins] wasf sufficient to protect his right to reasonably effective assistance of counsel," *Ex parte Thompkins*, Application No. 70, 101-01 at 77. Accordingly, under § 2254(d), no relief is available to Thompkins on his ineffective assistance of trial counsel claims

## VI. Conclusion and Recommendation

Based on the foregoing and the conclusion that Thompkins is entitled to no relief in this proceeding under § 2254(d), the Magistrate Judge

RECOMMENDS that Petitioner's Federal Application for Writ of habeas Corpus (Document No. 1) be DENIED, and that this § 2254 proceeding be DISMISSED WITH PREJUDICE on the merits.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 5th day of August, 2009.

Frances H. Stacy
United States Magistrate Judge